IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MICHAEL LAWRENCE,<br><br>        Plaintiff,<br><br> v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant. | Case No. 1:08-CV-18-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Michael Lawrence, asking the court to reverse the final agency decision denying his application for Disability Insurance Benefits (hereafter "DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. Plaintiff now challenges the decision of the Administrative Law Judge (hereafter "ALJ") by arguing that it is legally erroneous and not supported by substantial evidence.

Having carefully considered the parties' memoranda and the complete record in this matter, the court concludes the case must be remanded for the correct legal analysis to be conducted in this case.

## BACKGROUND

Plaintiff protectively filed a DIB application on March 5, 2002, alleging an onset of his disabling condition on December 1, 1988.  (Docket Entry #4, the certified copy of the transcript of the entire record of the administrative proceedings relating to Michael Lawrence (hereafter referred to as "Tr. __")  103-06.) The ALJ found that his date last insured was March 31, 1993. (Tr. 17.)  The application was denied initially and upon reconsideration.  (Tr. 53-54, 59-61, 65-67.)   Following the reconsideration denial, Plaintiff requested a hearing before an ALJ.  (Tr. 57-58.)  A hearing was held on January 27, 2004.  (Tr. 480-538.)  Plaintiff's wife and sister appeared and testified on his behalf; however, due to his anxiety, Plaintiff was unable to attend the hearing.  (Tr. 482.)  On May 13, 2004, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 44-52.)  On October 19, 2005, the Appeals Council reversed the ALJ's decision.  (Tr. 390-93.)

A second hearing was held before an ALJ on April 23, 2007. (Tr. 539-92.)  Plaintiff's parents and his representative attended the hearing; however, again, Plaintiff was unable to attend the hearing due to his anxiety.  (Tr. 541.)  On May 22, 2007, the ALJ issued a second unfavorable decision.  (Tr. 16-35.) The ALJ found that Plaintiff was not disabled because he did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related

2

activities for twelve consecutive months, and therefore, he did not have a "severe" impairment or combination of impairments. (Tr. 20-35.)  Plaintiff requested a review of the ALJ's decision. (Tr. 479.)  On January 17, 2008, the Appeals Council denied Plaintiff's request for review (Tr. 7-10), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 20 C.F.R. § 404.981.

On February 22, 2008, after receiving the Appeals Council's denial of his request for review, Plaintiff filed his complaint and the case was assigned to United States District Judge Tena Campbell.  (File Entry #1.)  Judge Campbell referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B).  (File Entry #2.)  Defendant then filed his answer on April 30, 2008.  (File Entry #3.)

On August 1, 2008, Plaintiff filed his memorandum requesting that the Commissioner's decision be reversed or remanded.  (File Entry #12.)  Defendant filed his response memorandum on August 27, 2008.  (File Entry #13.)  On September 12, 2008, Plaintiff filed his reply memorandum.  (File Entry #14.)

On April 15, 2009, the case was referred to Magistrate Judge Alba, pursuant to the parties' consent, under 28 U.S.C. § 636(c). (Docket Entries #6, 15.)

### STANDARD OF REVIEW

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial

evidence and whether correct legal standards were applied."
*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *accord*
*Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The
Commissioner's findings, "if supported by substantial evidence,
shall be conclusive."  42 U.S.C. § 405(g).  "'Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."'"  *Doyal*, 331 F.3d
at 760 (citations omitted).  The court may "'neither reweigh the
evidence nor substitute [its] judgment for that of the agency.'"
*White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation
omitted).

     The court's review also extends to determining whether the
Commissioner applied the correct legal standards.  *Qualls v.
Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Besides the lack of
substantial evidence, reversal may be appropriate where the
Commissioner uses the wrong legal standards or the Commissioner
fails to demonstrate reliance on the correct legal standards.
*See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994);
*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993);
*Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045,
1047 (10th Cir. 1993).

## ANALYSIS

     Under the Social Security Administration's regulations, an
adult qualifies for disability benefits under a five-step

sequential evaluation.  *See* 20 C.F.R. § 404.1520 et seq.  The
first two steps are satisfied if the claimant has not engaged in
substantial gainful activity since the alleged onset date of
disability and suffers from a severe impairment.  *See* 20 C.F.R. §
404.1520.  In this case, the ALJ's analysis ended at step two
because the ALJ found that Plaintiff did not suffer from a severe
impairment.  Plaintiff argues that the ALJ's step two finding was
not supported by substantial evidence and was legally erroneous.

At step two of the five-step sequential evaluation, the
claimant bears the burden of making a "threshold showing that his
medically determinable impairment or combination of impairments
significantly limits his ability to do basic work activities."
*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *see also*
*Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  The Tenth
Circuit has explained that, to meet this requirement at step two,
the claimant need only make a "de minimis" showing of impairment.
*See Hinkle*, 132 F.3d at 1352; *Hawkins v. Chater*, 113 F.3d 1162,
1169 (10th Cir. 1997).  Nevertheless, "the claimant must show more
than the mere presence of a condition or ailment."  *See Bowen*,
482 U.S. at 153.  An impairment or combination of impairments is
"not severe" when medical and other evidence establish only a
slight abnormality or a combination of slight abnormalities that
would have no more than a minimal effect on an individual's
ability to work.  *See* 20 C.F.R. § 404.1520; Social Security
Ruling (hereafter "SSR") 96-3p, 96-4p.  The claimant must meet

this requirement by using acceptable clinical or laboratory techniques, not just the claimant's statement of symptoms. *See* 20 C.F.R. §§ 404.1508, 404.1528. To be clear, at step two, the ALJ does not determine whether the claimant is disabled; rather, the ALJ determines whether the claimant has a "severe" impairment under this "de minimis" standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (holding that "although a severe impairment must significantly limit an individual's physical or mental ability to do basic work activities, . . . this is a de minimus showing at step two of the five-step process" (quotation and citation omitted)).

Careful review of the ALJ's decision reveals that the ALJ did not consistently apply the correct legal standard at step two of his analysis. Although the ALJ set out the correct standard in the initial and conclusory boilerplate language of his decision, in the body of his analysis, he repeatedly reveals that he is applying a different, higher standard to his step two analysis. For example, the ALJ states, "After considering the evidence of record, the undersigned finds that the medical evidence and other evidence, including the testimony and reports of various witnesses does not support a *severe, totally disabling* mental impairment or physical impairment." (Tr. 25, emphasis added.) Such language reveals the ALJ was not applying the correct de minimis standard set forth above; instead, the ALJ was

6

examining whether Plaintiff's mental impairment was "totally disabling."

Furthermore, in his analysis, the ALJ examines whether Plaintiff was credible (Tr. 26), whether Plaintiff was compliant with his treatment (Tr. 26), how much weight he should give each of the experts who offered reports and/or testimony (Tr. 30-35), whether various levels of functioning "would allow for some types of work" (Tr. 31), and whether the evidence establishes how long Plaintiff's "impairments existed at a 'disabling level of severity'" (Tr. 32).  These types of evaluations are those made later in the five-step disability analysis; generally they are not the type of evaluations needed to determine whether Plaintiff suffered from a severe impairment.  Also, they indicate the ALJ was examining whether the severity of Plaintiff's impairment was "disabling," not whether it significantly limited his ability to do basic work activities.  Such analysis again reveals the ALJ was not applying the proper legal standard in making his step two determination.

In addition, when evaluating various doctors' contradictory opinions, the ALJ concludes, "After considering and weighing the evidence, the ALJ concurs with Dr. Houston's opinion because the medical record contains no objective medical basis for making an informed judgment about whether and, if so, for how long the claimant's mental problems might have existed at a *disabling level of severity*." (Tr. 33, emphasis added.)  Again, this

7

conclusion reveals that the ALJ applied an improper legal standard by examining, at step two of his analysis, whether Plaintiff's impairments were "disabling."

The ALJ's failure to apply the correct legal standard is troubling because, although the medical record does not contain a lot of information during the relevant time period in this case, it does contain objective medical evidence that indicates Plaintiff probably suffered from a severe impairment during the relevant time period.  Dr. Houston, upon whose opinion the ALJ relied, stated that although he did not agree with Dr. Goldstein drawing conclusions so far back in time in a legal context, he admitted that in a clinical context, based on the evidence reported by Dr. Houston, he agreed with his conclusion that Plaintiff "has never been capable of functioning in the competitive workplace, nor living independently without the support of his family."  (Tr. 551.)  As a child,[1] in 1974,

---

[1]The ALJ rejected the opinions and conclusions of Dr. Goldstein and other experts because they were based in large part on interviews with family and friends.  Although the ALJ cited to and quoted from SSR 83-20, he dismissed evidence obtained from Plaintiff's family and friends about his past impairments.  *See* SSR 83-20, at *3 (providing that "[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in the file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation [such as] family members, friends, and former employers . . .").  Although the court does not address this issue, it notes that the ALJ dismissed this type of documentation based on a general theory that it was too old rather than by relying on specific problems with the content of the evidence, such as that the evidence was contradictory, inconsistent with medical records, or otherwise specifically

Plaintiff was put on Dilantin, which, according to Dr. Goldstein, indicated Plaintiff was two standard deviations beyond the mean. (Tr. 317-19.)  On July 22, 1994, just one year after Plaintiff's date last insured, Dr. Gill estimated a global assessment of functioning (GAF) score of 41, indicating a serious level of impairment, and that Plaintiff's GAF score was no more than 41 throughout the past year.  (Tr. 356.)  On August 22, 1994, the doctor who treated Plaintiff in the emergency room after his apparent suicide attempt assessed a current GAF of 29, with the highest in the past year being 49.  (Tr. 215.)  This evidence, as well as other in the record, indicates Plaintiff may have suffered from a mental impairment, beginning in childhood, that persisted over time through Plaintiff's last insured date, that may have significantly limited his ability to do basic work activities during the relevant time period.[2]

In conclusion, the ALJ applied the wrong legal standard in his step two analysis when examining whether Plaintiff suffered from a severe impairment.  Because the wrong legal standard was applied, and because objective medical evidence exists to indicate Plaintiff may have suffered from a severe impairment,

---

unreliable.

[2] Dr. Goldstein, Dr. Gill, and psychologist Olsen all opined that Plaintiff suffered from lifelong disabling psychiatric impairments that began in childhood.  Dr. Houston did not contradict these opinions but insisted on not giving an opinion because he refused to use evidence obtained from interviews with family and friends.

casting doubt on the ALJ's finding, the court concludes it must remand the case for the ALJ to apply the correct legal standard at step two.

### CONCLUSION

Based on the above analysis, the court concludes the ALJ applied the incorrect legal standard in determining Plaintiff did not suffer from a severe impairment.  Therefore, **IT IS ORDERED** that the case be **REVERSED AND REMANDED** for the ALJ to apply the correct legal analysis in determining, at step two, whether Plaintiff suffered from a severe impairment.  If the ALJ determines Plaintiff did suffer from a severe impairment, the ALJ must then continue in his or her analysis of whether Plaintiff is disabled.

DATED this 3rd day of September, 2009.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge